FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y
★ DEC 18 2008 ★
BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

-against-

MICHAEL UVINO,
PHILIP COSTANZA,
BRIAN DONO, and
JOHN TRIPI,

        Defendants.

---

MEMORANDUM & ORDER
ON DISMISSAL OF
UNFIT JUROR

07-CR-725 (JBW)

JACK B. WEINSTEIN, Senior United States District Judge:

## I. Introduction

Four defendants are being tried for racketeering and related charges, including illegal gambling, extortion conspiracy, robbery conspiracy, kidnapping, assault, and wrongful possession and use of a firearm. Essential to the government's case is the testimony of law enforcement agents and a cooperating witness with a considerable criminal background. During individual voir dire, Juror Six expressed his thoughts on the prospective testimony of a cooperating witness. He concluded that he would fairly judge the testimony and evidence at trial. Prior to the introduction of any evidence at trial, he made the court aware in writing of his apparent bias that might impact his ability to impartially consider such testimony. For the reasons set forth below, Juror Six is dismissed for cause. Alternate Juror One is seated as his replacement.

## II. Facts

Upon consent of the parties, jury selection was referred to Magistrate Judge James Orenstein. *See* Magistrate Judge Order, Nov. 3, 2008. Following the completion of jury

1



questionnaires by the prospective jurors, individual voir dire was conducted. *See* Voir Dire Tr., Dec. 1 and 2, 2008.

The questionnaire addressed the ability of jurors to fairly consider evidence and to render an impartial verdict. Question seventy, for example, inquired as follows:

> Some of the witnesses called by the government may have past criminal convictions, or may have been involved in some of the crimes charged in the indictment, or were involved in other serious criminal activity, including robberies and narcotics crimes. Some of these witnesses have pleaded guilty and are testifying pursuant to lawful agreements with the government. Some of these witnesses may be hoping that their testimony will result in a reduced sentence or some other benefit. There is nothing unlawful about the government's use of such witnesses. Would you have any difficulty in accepting the use of such evidence?

*Id.* at 24.

Juror Six fully completed the twenty-five page juror questionnaire. In response to question seventy, he marked "Yes," and explained his response: "I have mixed feelings about this. I am not certain that I could fully accept the testimony of such individuals. However, I have no difficulty in accepting the use of such evidence. I simply do not know the amount of weight I would give such testimony." *Id.* During individual voir dire, Magistrate Judge Orenstein inquired about Juror Six's written response:

> The Court: You told us in response to the question about witnesses who may have past criminal convictions or may even have been involved in crimes that the government alleges took place here, you said you have mixed feelings, you're not certain that you could fully accept the testimony of such individuals, but you have no difficulty in accepting the use of such evidence; you simply do not know the amount of weight you would give such testimony. Tell me a little bit more about what you had in mind.
>
> The Prospective Juror: Well, I think that it might be more difficult for me to believe somebody who had an ulterior motive for their testimony. In a case like that, that could happen where somebody wishes to reduce their sentence by testifying against their - - you know, people that they've known.

The Court: Well, you said it might. How would you figure out what kind of weight to give that kind of testimony?

The Prospective Juror: I guess through the testimony itself.

The Court: Okay. If the testimony itself or other circumstances of the case led you to believe that what the person was saying was true, would you have any difficulty relying on it for a verdict?

The Prospective Juror: No.

The Court: All right. Do you come in with any preconceived ideas about how you would evaluate such testimony or would you just have to wait and listen to hear what the person said?

The Prospective Juror: Well, I think if it was a police officer testifying as opposed to a criminal testifying, that I would give more weight to the police officer.

The Court: What if it was somebody who was neither telling you that he committed crimes or a police officer, just a man off the street ... and compare that to a police officer, is my question.

The Prospective Juror: Compared to the police officer, I think I would give them both the same weight.

The Court: So it's just that the person who committed crimes starts off with a little less ability?

The Prospective Juror: Yes.

The Court: But you'd be willing to accept that testimony based on what else the person said, what other evidence?

The Prospective Juror: Yes.

Voir Dire Tr. at 124-25, Dec. 1, 2008.

Juror Six was not challenged for cause and neither party used a peremptory strike to remove him. *See* Trial Tr. at 579, Dec. 3, 2008. He was selected to serve on the jury.

3

The trial began on December 3, 2008. Prior to the jury being sworn, the court asked the parties if the jury was satisfactory. *See id.* at 385. Counsel for all parties responded in the affirmative. The jury was then sworn by the court. *See id.*

At the commencement of trial, the court described the trial process to the jury. It explained that the opening statements are not evidence, but instead assertions of what the parties hope to provide during the trial. *Id.* at 386-88.

Defense counsel reminded the jury that opening statements were not evidence. *See id.* at 392 ("But what I tell you is not evidence."); *id.* at 400 ("Remember this is not evidence."); *id.* at 437 ("You know . . . what these openings are and what they are not. . . . What they are not is evidence.").

At a recess following the opening statements, and before the jury had heard any testimony or received any evidence, Juror Six sent the following note to the court:

> Dear Judge                                      12/03/08
> As previously stated in my [questionnaire], I feel strongly biased against believing a witness who has ulterior motives regarding his testimony. In other words, one who has [committed] a crime or crimes and cooperates for a reduced sentence. This feeling has been further [strengthened] after opening statements. I also feel no sympathy toward the alleged victims of the crime when they themselves were involved in an armed [robbery].

Note from Juror Six, Ct. Ex. 1, Dec. 3, 2008.

The court held a hearing with the parties regarding Juror Six's note. *See* Trial Tr. at 574-92. It reviewed Juror Six's answer to question seventy of the jury questionnaire and relevant portions from the transcript of the individual voir dire. *See id.* at 576-79. The juror's connections to law enforcement and prior jury experience were considered:

> [Juror Six] states that [his] father was a cop, and his nephew is one. He has connections to the court and correctional institutions. His father was a police captain. He said that nothing would interfere with his ability to serve because of that connection. He's been a

4

juror a number of times in civil and criminal cases. The criminal cases were some time ago.

*Id.* at 576-77.

The court noted that, upon inquiry during individual voir dire, Juror Six had indicated to the magistrate judge that he would be able to put aside his biases in assessing the testimony of the witnesses at trial and to fairly consider the evidence and the testimony of all witnesses:

> The Court: ... How would you figure out what kind of weight to give that kind of testimony?
>
> The Prospective Juror: I guess through the testimony itself.
>
> The Court: Okay. If the testimony itself or other circumstances of the case led you to believe that what the person was saying was true, would you have any difficulty relying on it for a verdict?
>
> The Prospective Juror: No.
>
> ....
>
> The Court: ... [Y]ou would be willing to accept the testimony based upon what else the person said, what other evidence?
>
> Prospective Juror: Yes.

Voir Dire Tr. at 123-25, Dec. 1, 2008.

### III. Law

Federal Rule of Criminal Procedure 24 sets forth the procedure for selecting and replacing jurors: "The Court may impanel up to 6 alternate jurors to replace any jurors who are unable to perform or who are disqualified from performing their duties." Fed. R. Crim. P. 24(c). The rule does not address the circumstances under which a juror is disqualified from performing duties. The relevant case law provides an appropriate analysis for identifying a juror that must be disqualified from service.

In *United States v. Agramonte*, 980 F.2d 847 (2d Cir. 1992), prior to jury deliberations and upon disclosure that a juror had conversed with defense counsel before voir dire and that the juror's husband was defense counsel's wife's physician, the court dismissed the juror. The Court of Appeals for the Second Circuit affirmed the dismissal, holding that "[u]nder Fed. R. Crim. P. 24(c), district courts have *broad discretion to replace jurors at any time before the jury retires for deliberations.* Such a decision will be upheld unless the defendant shows bias or prejudice." *Id.* at 850 (emphasis added). *See also United States v. Purdy*, 144 F.3d 241, 247 (2d Cir. 1998) ("District courts ... have broad discretion under Federal Rule of Criminal Procedure 24(c) to replace a juror at any time before the jury retires if there is reasonable cause to do so, and a reviewing court will only find abuse of that discretion where there is bias or prejudice to the defendant") (internal quotation marks omitted).

Dismissal once jury deliberations begin is much more limited. *See, e.g., United States v. Abbell*, 271 F.3d 1286, 1302 (11th Cir. 2001). The court in *Abbell* held that in reviewing the dismissal of a juror during jury deliberations, an appellate court should "apply a tough legal standard" because "a juror should be excused [in the midst of deliberations] only when no 'substantial possibility' exists that she is basing her decision on the sufficiency of the evidence. We mean for this standard to be basically a 'beyond a reasonable doubt' standard." *Id.*

The Court of Appeals for the Second Circuit has provided guidance on how a trial court may evaluate the factual record in making a determination on a juror's qualifications to serve. *See United States v. Thomas*, 116 F.3d 606 (2d Cir. 1997). In *Thomas*, the appellate court explained that a "juror who intends to nullify the applicable law is no less subject to dismissal than is a juror who disregards the court's instructions due to an event or relationship that *renders him biased or otherwise unable to render a fair and impartial verdict.*" *Id.* at 614 (emphasis added). Given its ability to assess all relevant facts, a trial court has significant discretion in

deciding when a juror must be excused: "[T]he district court is uniquely situated to make the credibility determinations that must be made . . . where a juror's motivations and intentions are at issue." *Abbell*, 271 F.3d at 1303 (citations omitted).

When it is apparent that a juror is not capable of fulfilling his duty – particularly prior to the introduction of any testimony or evidence – the court must exercise its discretionary authority to discharge that juror and to preserve fairness throughout the trial proceedings.

### IV. Application of Law to Facts

The government contended that there was cause to dismiss Juror Six, since he would be unable to consider the evidence without bias. *Id.* at 583-84. Defense counsel argued for retaining the juror, citing the juror's statements during jury selection that he would be able to follow the court's instructions and to fairly consider the evidence. *Id.* at 585-88. The defense submitted that the juror's stated position did not reflect improper bias, but rather that he had been influenced by defense counsel's persuasive opening statements. *Id.*

The juror was dismissed by the court, based on the following reasoning:

> The juror and the jury were advised fully that the openings were not evidence. So before hearing any evidence or hearing any testimony, this juror says, I feel "strongly biased" against the kind of witnesses we are going to have here. Then he goes on to say, *"This feeling has been further strengthened after opening statements."* That means that he had this strong bias before the openings. And at the time of the voir dire, he was misleading, as I read the record, the magistrate judge. And contrary to what he said about being influenced only by testimony and evidence, he was influenced by non-evidence -- that is, the openings. This seems to me a very strong case. Therefore, dismissal of the juror is granted.

*Id.* at 589-90 (emphasis added). The court noted that Juror Six's stated lack of sympathy for the alleged victims was not relevant to the decision on dismissal.

Juror Six was discharged and his notes were sealed. *See id.* at 592. Alternate Juror One replaced him.

## V. Conclusion

Juror Six initially represented that he would be able to consider the testimony and evidence at trial without allowing his biases to interfere with his duties as a juror. Prior to receiving any evidence, he expressed biases and preconceived notions that made clear his inability to fairly consider the evidence and follow the instructions of the court. He is disqualified from jury service in this case.

SO ORDERED.

Jack B. Weinstein
Senior United States District Judge

Dated: December 16, 2008
       Brooklyn, New York